IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Frederick D. Baker, #236534, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:06-1682-GRA-WMC |
| vs. ) | |
| ) | |
| Jon E. Ozmint, Director of SCDC; Randall ) | |
| Manning, Institutional Director; Pravin R. ) | **REPORT OF MAGISTRATE JUDGE** |
| Patel, Institutional Doctor; Andrew Simpson, ) | |
| Outside Director; Willie Eagleton, Warden of ) | |
| Evans Correctional Institution; James F. ) | |
| Griffin, Investigator at Evans Correctional ) | |
| Institution; John Jones, Officer at Evans ) | |
| Correctional Institution; Sharon Patterson, ) | |
| Disciplinary Hearing Officer (DHO); NFN ) | |
| Green, Captain; NFN Roger, Captain; NFN ) | |
| McFadden, Assistant Warden; S. Skipper, ) | |
| Grievance Coordinator at Evans Correctional ) | |
| Institution; Sara L. Murdock, Head Nurse; ) | |
| Julia Segal, Nurse; Barbara A. Mitchell, ) | |
| Nurse; Donica K. Davis, and Evans Medical ) | |
| Staff, ) | |
| Defendants. ) | |

The plaintiff, a former state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

---

[1] On February 22, 2007, the plaintiff filed a change of address with the Clerk of Court, indicating that he has been released from custody.

In his complaint, the plaintiff appears to allege that he did not receive proper or adequate medical treatment for an alleged serious injury as a result of a broken leg. He also seeks damages as a result of his broken leg, which was suffered during an altercation with a prison employee, defendant Randall Manning. The plaintiff asks that, as a result of these acts, the court enter judgment in favor of the plaintiff for nominal compensatory and punitive damages against each defendant, jointly and severally, and enter a permanent injunction ordering the defendants to (1) grant the plaintiff all adequate medical needs until he is released and for the remainder of his life; (2) order the SCDC to implement a adequate classification of the plaintiff; (3) order the SCDC to destroy the plaintiff's DNA which was forcefully taken from him on February 1, 2005; and (4) order the SCDC to properly train its employees. The plaintiff alleges causes of action for violation of his Eighth Amendment right to be free from cruel and unusual punishment, deliberate indifference to his medical needs, and breach of his right to due process and equal protection under the Fourteenth Amendment.

The individual defendants ("SCDC defendants") were employed by the South Carolina Department of Corrections on June 4, 2006, with the exception of individual defendant Dr. Andrew Simpson. The SCDC defendants filed a motion for summary judgment on October 14, 2006. By order filed October 17, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 31, 2006, defendant Simpson filed a motion for summary judgment. By order filed November 1, 2006, pursuant to *Roseboro*, the plaintiff was again advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 21, 2006, the plaintiff filed a response to the motions. On November 29, 2006, defendant Simpson filed a reply brief,

and on December 1, 2006, the SCDC defendants filed a reply brief. The plaintiff filed a response to these pleadings on December 8, 2006.

## **FACTS PRESENTED**

The plaintiff, a former inmate at Evans Correctional Facility ("Evans") in Bennettsville, South Carolina, was involved in an altercation with a prison employee, defendant Randall Manning, on June 6, 2004, in which he injured his leg (Manning aff ¶ 2). According to Manning, on the night of the incident, he told the plaintiff to go into his cell for the inmate count, but the plaintiff stated that he wanted to smoke. Manning told him to return to his cell, but the plaintiff again repeated his request to smoke, at which time the plaintiff began arguing with Manning. The plaintiff grabbed Manning around his knees and tried to lift him. During their struggle, the plaintiff and Manning fell to the floor, and the plaintiff stated that his leg was hurt and that he was in pain. Manning testified that he immediately called for assistance, and within 10 to 15 minutes help arrived (Manning aff. ¶ 2). The plaintiff maintains that Manning grabbed him first (pl. resp. m.s.j. 19).

Dr. Pravin Patel, a medical doctor at Evans, was called at home about the plaintiff's injury. Dr. Patel advised that the plaintiff's leg should be secured with a splint, and he should be transported to the hospital (Patel aff. ¶ 1). Defendant Sara Murdock, a nurse at Evans, testified that she saw the plaintiff as soon as she was made aware of his injury, she prepared a splint for his leg, and he was transported to Richland Memorial Hospital (Murdock aff. ¶ 1). The plaintiff left Richland Memorial Hospital on June 6, 2004, and was transported to Kirkland Correctional Center Hospital, where he stayed until June 8, 2004 (*id.*). Subsequently, he was returned to Evans, where he received continuing treatment from Dr. Patel, which included an MRI, ultrasound, pain medication, crutches, examination of his knee and leg, referrals to specialists, and physical therapy (*id.;* pl. comp., ex. W, X). The plaintiff states that he had surgery on his knee on January 7, 2005 (pl. resp m.s.j. 15).

Defendant Andrew Simpson was a resident physician in the orthopedic surgery program of Palmetto Health Alliance at the time of the plaintiff's injury (Simpson aff. ¶ 3).  Dr. Simpson provided health care to inmates of the South Carolina Department of Corrections through a clinic conducted by Palmetto Health Alliance (*id.*).  On several occasions during his employment with Palmetto Health, Simpson provided healthcare to the plaintiff under the supervision of Dr. Koon, University of South Carolina School of Medicine orthopedic surgeon (*id.* at ¶ 4).  According to Dr. Simpson, after the plaintiff's surgery, he examined the plaintiff and wrote a prescription for a knee brace (*id*. ¶ 5).  Dr. Simpson later examined the plaintiff while he was wearing the knee brace, and determined at that time that the plaintiff needed a new brace for his knee.  Accordingly, Dr. Simpson ordered the new brace (*id.* ¶ 6).  Dr. Forno, another resident in the orthopedic surgery program at Palmetto Health Alliance, examined the plaintiff and discussed with him the condition of his knee (Baker aff. ¶ 1).  Dr. Forno told the plaintiff that Dr. Simpson had ordered a knee brace for him, to which the plaintiff responded, "I know" (*id.*).  Dr. Forno explained that the braces the plaintiff was wearing were "no good," but that Dr. Simpson was "re-ordering these braces" (*id.*).

According to Captain Kenny Green of the SCDC, the policy for the use of force in June 2004 was that force was authorized for self-protection, protection of another, to enforce rules and regulations, to prevent escape, and to prevent suicide.  He further testified that defendant Manning's use of force was the minimal amount of force necessary to protect himself and to enforce the rules and regulations of Evans (Green aff. ¶¶ 2-3).

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff's claims fail on the merits. He first alleges that the defendants were deliberately indifferent to his medical needs. Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

In order to establish that he has been subjected to cruel and unusual punishment, the plaintiff must prove that the deprivation of a basic human need was, objectively, sufficiently serious and that, subjectively, the officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). What suffices as a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Courts have traditionally attempted to avoid intervening and dictating the medical care of prisoners. As noted by the Fourth Circuit, courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . .[which] remains a question of sound professional judgment." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

With respect to the subjective component of deliberate indifference, while an "express intent to inflict unnecessary pain is not required . . . [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere disagreement between an inmate and a physician over the appropriate form of treatment is not an actionable constitutional claim. *Wright v. Collins*, 766 F2d 841, 849 (4th Cir. 1975).

The plaintiff's leg injury was clearly a serious medical need. However, the plaintiff has failed to provide any evidence that the defendants were deliberately indifferent to that need and that he suffered any injury as a result of the defendants' actions. The plaintiff has not offered any competent medical evidence regarding the sufficiency of the defendants' treatment of the plaintiff's injuries. The plaintiff has offered only his own allegations. A plaintiff's medical opinions regarding his treatment amount to conjecture and are insufficient. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989). While a plaintiff is competent to relay his current condition, he is not competent to testify regarding whether the injuries he alleges are permanent or whether such injuries were proximately caused by any action or inaction of the defendants. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *abrogated in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002))("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to

7

succeed. . . delay in medical treatment must be interpreted in the context of the serious of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay."). Furthermore, the plaintiff alleges, at most, that the defendants were negligent. Even if the plaintiff could prove that the defendants were negligent, mere negligence does not constitute a constitutional violation. *Grayson*, 195 F.3d at 695 ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."). Accordingly, the claim fails.

The plaintiff next alleges that the SCDC defendants were deliberately indifferent to his safety needs. *See Farmer v. Brennan*, 511 U.S. 825 (1994) (prison officials have duty to protect prisoners from violence "at the hands of other prisoners"). "[F]or a claim based on a failure to prevent harm, a person must show that he is being detained or incarcerated 'under conditions posing a substantial risk of serious harm.'" *Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001) (citing *Farmer*, 511 U.S. at 834). Next, the prison official must have a "sufficiently culpable state of mind." *Id.* In adopting an objective standard of "deliberate indifference," the Supreme Court in *Farmer* stated:

> ... a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. The Supreme Court in *Farmer* equated the deliberate indifference standard with the "subjective recklessness" standard of criminal law. *See id.* at 839-840. As the Fourth Circuit noted in *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997), "[t]rue subjective recklessness requires both knowledge of the general risk, and also that the conduct is inappropriate in light of that risk."

8

Here, there is no evidence that the defendants were aware of any risk to the plaintiff. There is no evidence that he had been the subject of specific threats; there is no evidence that the risk of attack was pervasive at the facility; and there is no evidence that the plaintiff belonged to a class identified as vulnerable to assaults. *See Randolph v. Maryland*, 74 F.Supp.2d 537, 542 (D. Md. 1999). The evidence before the court shows that the defendants were not aware of facts from which the inference could be drawn that a substantial risk of harm existed. Further, the evidence shows that the defendants acted immediately by getting medical help for the plaintiff after his altercation with the SCDC employee. The plaintiff appears to claim that the defendants should not have placed him back at Evans following his leg injury. However, he has offered no evidence that his placement in Evans following his leg injury caused him any harm.

Lastly, the plaintiff claims that he was subjected to excessive force in the altercation with defendant Manning. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Moreover, the United States Supreme Court has noted that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citation omitted). The Court further stated, "The Eighth Amendment's

prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id.* at 9-10.  The "core judicial inquiry" in evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 7.  The plaintiff has failed to prove that the prison officials acted with a sufficiently culpable state of mind.  Accordingly, the claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motions for summary judgment be granted.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

June 25, 2007

Greenville, South Carolina